**UNITED STATES of America,**

v.

**Frank Richard NICKENS, Appellant,**

**Frank Nickens, Appellant.**

**Nos. 01–2236, 01–2237.**

United States Court of Appeals, Third Circuit.

Submitted April 4, 2002.

Filed April 12, 2002.

Before SLOVITER, BARRY and ALARCON,* Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Frank Richard Nickens was charged in a sixty-seven count indictment with wire fraud involving the use of the Internet in violation of 18 U.S.C. §§ 2, 1343. Nickens pled guilty pursuant to a plea agreement and now challenges a two level increase in his guideline computation based on the determination that the offense was committed through "mass-marketing," as set forth in U.S.S.G. § 2F1.1(b)(3).

Following the recommendation of the presentence report, the District Court applied a two level increase, determining that the offense was committed through "mass-marketing" pursuant to U.S.S.G. § 2F1.1(b)(3). The commentary defines "mass-marketing" as follows:

> a plan, program, promotion, or campaign that is conducted through solicita-

tion by telephone, mail, the Internet, or other means to induce a large number of persons to (A) purchase goods or services; . . . . The enhancement would apply, for example, if the defendant conducted or participated in a telemarketing campaign that solicited a large number of individuals to purchase fraudulent life insurance policies.

U.S.S.G. § 2F1.1, cmt. n. 3 (2000).

According to the presentence report, which Nickens does not dispute in this appeal, from February 1999 to February 2000, Nickens, working with an associate, solicited money over the Internet from customers in the United States, Canada and Europe. Using a "harvesting" program, Nickens obtained E-mail addresses for individuals who had unsuccessfully bid on products on E–Bay and other on-line auction businesses. In his E-mails, Nickens claimed to have the same or a similar product for sale but wanted to deal directly with the customer and avoid the utilization of auction businesses. He required that the money for the product purchased be wired or sent by certified check to accounts set up at Northern Central Bank before the merchandise would be delivered.

Nickens shipped no merchandise and, as customers complained, he employed a variety of delaying tactics. Typically, Nickens sent E-mail to the customer that: (a) the company was too busy to respond right away; (b) the matter was under investigation; (c) the merchandise was improperly shipped; and (d) the merchandise had been returned and would be re-shipped. Also, he provided some customers with a false tracking number or blamed the delivery service for improper delivery. From February 1999 to February 2000, Higgins

---

* Hon. Arthur L. Alarcon, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

and his associate employed this scheme to defraud 67 victims of $229,553.55.

Nickens makes two arguments on appeal: First he states that "[a]lthough [he] was charged in a Sixty-seven Count Indictment, and the Indictment list [sic] the name [sic] of individuals, there seems to be no listing of a specific group of people targeted. In other words, individuals were solicited as opposed to a specific targeted group of people, such as the elderly, families, etc." Br. of Appellant at 6. Nickens points us to nothing in the commentary or the guidelines that suggests that the application of § 2F1.1(b)(3) depends in any way on the targeting of some specific class of people. We reject his suggestion that we discern such a requirement in the Guidelines.

Nickens' second argument is based on a dissent in a Ninth Circuit case, *United States v. Pirello*, 255 F.3d 728 (9th Cir. 2001). In *Pirello*, the majority had affirmed the district court's § 2F1.1(b)(3) enhancement based on Pirello's having placed fraudulent advertisements on the Internet. In dissent, Judge Berzon questioned the applicability of § 2F1.1(b)(3) because Pirello had not actively solicited purchasers by pursuing them individually, but had passively placed an advertisement in an attempt to entice viewers.

Whatever the merits of Judge Berzon's dissent, her proposed distinction is not applicable here. Via E-mail, Nickens actively pursued individuals who had expressed interest in particular items on E–Bay. Even under Judge Berzon's reading of § 2F1.1(b)(3), Nickens "solicited" his victims by targeting and pursuing them individually. Nickens also filed a pro se motion requesting leave to file a supplemental brief. In it, Nickens argues that his Fifth Amendment rights were violated when

the appelle[e], the United States of America, through the Middle District of

Pennsylvania did violate [Nickens'] Fifth Amendment Rights when the court did NOT have the required detention, or bail hearing as required by the law, and more importantly the Constitution of the United States of America.

As this Honorable Court can clearly see by the docket sheet, in this case, the appellant never had the required detention or bail hearing.

Appellant's Supp. Br. at 1.

The docket reveals that the Government moved to "detain" Nickens on August 17, 2000 and the District Court granted the motion by "Oral Order" on the same day. *See* App. at 4.

For the foregoing reasons, we will affirm the District Court.